**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0024n.06

Case No. 18-5625

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 15, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| IN RE: RYAN EDWARDS; LESLIE EDWARDS, <br><br> Debtors. <br><br><br> COMMUNITY FINANCIAL SERVICES BANK, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> RYAN EDWARDS, <br><br> Defendant-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES BANKRUPTCY PANEL FOR THE SIXTH CIRCUIT COURT OF APPEALS <br><br><br><br> **OPINION** |

BEFORE: MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge.

Appellant Ryan Edwards missed the fourteen-day deadline to file a notice of appeal after the bankruptcy court presiding over his Chapter 7 filing awarded his creditor a non-dischargeable judgment. Sixteen days after the deadline passed, Edwards filed a late notice of appeal, along with a motion to extend the deadline for filing that notice. Under the Federal Rules of Bankruptcy Procedure, Edwards's only chance at winning the motion was to show that his delay was the product of "excusable neglect." That is a high standard—one that Edwards does not meet.

Accordingly, we AFFIRM the bankruptcy court's denial of Edwards's motion to extend the deadline for filing his notice of appeal.

**I.**

Ryan Edwards filed a Chapter 7 bankruptcy proceeding in October 2014 and retained Steve Vidmer as his attorney. After the bankruptcy proceedings began, Appellee Community Financial Services Bank ("CFSB") filed an adversary proceeding against Edwards, and on July 17, 2017, the bankruptcy court awarded CFSB a non-dischargeable judgment of $610,053.55. Edwards learned of the adverse judgment on the day of its entry; the next day, he called Vidmer to discuss the path forward and the possibility of appealing the judgment. By Edwards's account, Vidmer "said there is a deadline [for filing a notice of appeal], but [Edwards] didn't ask him if it was a numbered amount." (R. 94, Tr. at 15:23–24.) Because Vidmer was not an appellate attorney, he declined to take the appeal and recommended that Edwards retain new counsel. Thus, Edwards began to search for appellate counsel.

Edwards went online to identify potential attorneys to take his case and began calling and emailing several of them on July 19. Louisville attorney Jamie McGee was the first to respond, and on July 25, McGee referred Edwards to Todd Farmer, a colleague in Paducah. When Farmer and Edwards spoke on July 27, Farmer informed Edwards that the deadline to file a notice of appeal was fourteen days after entry of the judgment but that he lacked capacity to handle the appeal. So Farmer referred Edwards to yet another attorney, Michael Byers. The clock kept ticking.

Edwards and Byers first communicated, by email, on August 5, and Edwards agreed to retain Byers on August 11. With Byers acting as his appellate counsel, Edwards filed a notice of appeal on August 16, but because the July 31 deadline to file a notice of appeal had long passed,

Edwards also moved to extend the deadline for filing the appeal. After holding a hearing at which Edwards provided sworn testimony, the bankruptcy court denied Edwards's motion to extend, and the Bankruptcy Appellate Panel of the Sixth Circuit affirmed that decision. This appeal followed.

**II.**

We review the bankruptcy court's decision, which comes to us through appeal from the Bankruptcy Appellate Panel of the Sixth Circuit. *In re Maughan*, 340 F.3d 337, 341 (6th Cir. 2003). Here, we apply two standards of review. Whether the bankruptcy court correctly applied the Federal Rules of Bankruptcy Procedure is a question of law that we review de novo. *In re Downs*, 103 F.3d 472, 477 (6th Cir. 1996). But we review the bankruptcy court's ultimate refusal to extend the deadline to file a notice of appeal for abuse of discretion. *See United States v. Dotz*, 455 F.3d 644, 647 (6th Cir. 2006). That standard is deferential: we may overturn a lower court's decision only if it was "arbitrary, unjustifiable or clearly unreasonable." *Plain Dealer Pub. Co. v. City of Lakewood*, 794 F.2d 1139, 1148 (6th Cir. 1986).

**III.**

Under the Federal Rules of Bankruptcy Procedure, a party seeking to appeal a judgment must file a notice of appeal within fourteen days from the entry of that judgment. Fed. R. Bankr. P. 8002(a). Yet even if a party misses that deadline, the rules provide some leeway. A bankruptcy court may extend the time to file a notice of appeal if the party files a motion that meets these two requirements: (1) the party must file the motion within twenty-one days after the original deadline expired; and (2) the party must show "excusable neglect." Fed. R. Bankr. P. 8002(d)(1)(B). Because Edwards filed his motion sixteen days after the original deadline expired, neither party disputes that he satisfied the first requirement. At issue here is whether Edwards has shown excusable neglect.

3

Congress did not define excusable neglect when it drafted the Federal Rules of Bankruptcy Procedure, prompting the Supreme Court to conclude that the determination of what constitutes excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship.*, 507 U.S. 380, 395 (1993). But bankruptcy courts are not completely adrift. In *Pioneer*, the Supreme Court identified factors to consider in determining whether a party has shown excusable neglect, including: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Since the Court decided *Pioneer*, we have considered excusable neglect in different contexts and repeatedly underscored that it is a difficult standard to satisfy. *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006) ("Excusable neglect has been held to be a strict standard which is met only in extraordinary cases."); *see also Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 458 (6th Cir. 2014); *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989).

Applying the *Pioneer* factors, the bankruptcy court determined that Edwards did not show excusable neglect and denied his motion. On appeal, Edwards raises three issues related to that determination, which we consider in turn.

**A.**

We first consider whether the bankruptcy court misapplied the first *Pioneer* factor—the danger of prejudice. Edwards argues that the bankruptcy court erred by considering the possibility of prejudice to CFSB, were it to grant the motion, even though *he* was the debtor. Although the first *Pioneer* factor, when read in isolation, suggests that the bankruptcy court should have considered the possibility of prejudice to Edwards, context suggests otherwise. In *Pioneer*, it was

a group of creditors—*not the debtor*—that sought to demonstrate excusable neglect for failing to file a proof of claim by a court-imposed deadline. *Id.* at 383–84. For that reason, the Court explained that the lower court properly considered the "danger of prejudice to the *debtor*" when determining whether the creditors had shown excusable neglect. *Id.* at 395 (emphasis added). The confusion here arises because the Court couched its analysis in particular, rather than general, language. The Court's focus was not on the debtor per se but on the debtor because it was the *non-moving party.* As a result, this court has repeatedly described the first *Pioneer* factor as the risk of prejudice to the non-moving party. *See, e.g.*, *Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012); *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522 (6th Cir. 2006); *Duncan v. Washington*, 25 F.3d 1047 (6th Cir. 1994) (per curiam). Thus, the bankruptcy court did not err by considering the risk of prejudice to CFSB—the non-moving party—when it applied the first *Pioneer* factor.

**B.**

Edwards argues that the bankruptcy court misconstrued *Pioneer* by applying four—rather than five—discrete factors to determine whether he showed excusable neglect. According to Edwards, the bankruptcy court erroneously merged whether the delay "was within the reasonable control of the movant" into the third factor, "the reason for the delay," when, in fact, the former question is a standalone factor. *Pioneer*, 507 U.S. at 395. While Edwards warns that the bankruptcy court's analysis "will eviscerate the multi-factor analysis set forth by *Pioneer*," (Appellant Br. at 15), we see no reason for this hyperbole.

The plain language in *Pioneer* suggests that the excusable neglect analysis comprises four factors and that the third factor, the reason for the delay, includes the question of whether the delay was within the reasonable control of the movant. If the Court had meant to isolate the reason for

the delay from the question of whether the delay was within the reasonable control of the movant, it would not have added the word, "including," immediately preceding the clause, "whether it was within the reasonable control of the movant." Rather, the Court would have left that clause as a standalone factor—much like the final *Pioneer* factor, "whether the movant acted in good faith." Although we believe that this is the most accurate reading of *Pioneer*, we note that our prior decisions on this issue are inconsistent. In *United States v. Munoz*, we said that the "four-factor division is more faithful to the *Pioneer* Court's language" and therefore treated the third factor as inclusive of "whether the delay was within the reasonable control of the late party." 605 F.3d 359, 368 n.5 (6th Cir. 2010). But our decisions from before and after *Munoz* refer to the *Pioneer* Court's *five* factors and separate the reason for the delay from the question of whether the delay was within the reasonable control of the moving party. *See, e.g.*, *Yeschick*, 675 F.3d at 629; *Nafziger*, 467 F.3d at 522; *In re Eagle-Picher Indus., Inc.*, 131 F.3d 1185, 1188 (6th Cir. 1997).

Whether *Pioneer* identifies four or five discrete factors makes no difference here because the bankruptcy court considered both the reason for the delay and whether Edwards had any reasonable control over the delay. The bankruptcy court refers to the reason for the delay as Edwards's "[d]ifficulty finding an attorney to prosecute an appeal," which it said "cannot form the basis for an extension under the excusable neglect standard." (R. 86, Order at Page 5.) But the bankruptcy court still considered whether Edwards had any control over the delay and concluded that "nothing prevented [Edwards] from seeking a timely extension *pro se*." (*Id.*) Indeed, the court found that Edwards "could have requested an extension of time at any time prior to the running of the appeal deadline," including during the "several days each week" that he was at home and not working. (*Id.* at Page 5–6.) To be sure, Edwards may not have wanted to proceed pro se, but that does not change the fact that he could have filed a notice of appeal himself (and

later retained counsel to prosecute the appeal) to avoid the late filing. For these reasons, we find no error in the bankruptcy court's application of *Pioneer*.

## C.

Finally, we consider whether the bankruptcy court abused its discretion by denying Edwards's motion. Edwards contends that the bankruptcy court should have been more forgiving of his late filing, given that he was proceeding pro se until after the deadline to file a notice of appeal had passed. In support of this argument, Edwards cites *Haines v. Kerner*, in which the Supreme Court noted that it held the allegations in a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers . . . ." 404 U.S. 519, 520 (1972).

Although courts must construe liberally the contents of a pro se complaint, the drafting of which "presupposes some degree of legal training," it does not follow that courts must excuse a pro se plaintiff's failure to comply with straightforward rules for which no legal training is required. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Indeed, when a pro se litigant "fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). And specifically in the context of excusable neglect, we have said that "[i]gnorance of the rules or mistakes in construing the rules," even by those without counsel, is not necessarily excusable. *Nicholson*, 467 F.3d at 527. As a result, the bankruptcy court did not abuse its discretion by denying Edwards's motion.

## IV.

For these reasons, we AFFIRM the bankruptcy court's denial of Edwards's motion to extend the deadline to file his notice of appeal.