RECOMMENDED FOR PUBLICATION
File Name: 22b0002p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE:  MICHELLE DOUGHERTY-KELSAY,

*Debtor*.

No. 19-8013

Appeal from the United State Bankruptcy Court
for the Eastern District of Kentucky at Covington.
No. 2:18-bk-20085—Tracey N. Wise, Judge.

Argued:  November 9, 2021

Decided and Filed:  March 21, 2022

Before:  DALES, MASHBURN, and PRICE SMITH, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  J. Christian A. Dennery, DENNERY, PLLC, Covington, Kentucky, for Appellant.
Michael B. Baker, THE BAKER FIRM, PLLC, Covington, Kentucky, for Appellee.  **ON BRIEF:**
J. Christian A. Dennery, DENNERY, PLLC, Covington, Kentucky, for Appellant.  Michael B.
Baker, THE BAKER FIRM, PLLC, Covington, Kentucky, for Appellee.

_____

## OPINION

_____

JESSICA E. PRICE SMITH, Bankruptcy Appellate Panel Judge.  This appeal arises from
a Memorandum Opinion and Order Regarding Debtor's Stay Violation, Attorneys' Fees,
Confirmation, and Case Disposition entered April 23, 2019 (the "Stay Violation Order").

Michelle Dougherty-Kelsay ("Debtor") and Michael Stephen Kelsay ("Creditor") were
married in 2001 and have three children.  Their divorce proceedings began in July 2007 and a
decree of dissolution was entered in July 2008.  Domestic support and child custody issues have

continued to be litigated. In 2017, Creditor obtained primary custody of the children. In May 2017, he filed a Motion for Child Support and Motion for Contempt in the Kenton County Circuit Court ("Family Court") seeking an order "establishing a sum of child support to be paid by Debtor to Creditor for the parties' three minor children." A monthly support amount was determined. At issue in this appeal are expenses for medical care and extra-curricular activities, payment of past due support obligations, and the judgment for payment of the outstanding obligations and related contempt findings. Pre-petition, the Family Court established that the parties would split the cost of medical care and extra-curricular activities for the children, with Creditor paying 68% of those costs, and Debtor paying 32%. Creditor was seeking reimbursement for Debtor's share of incurred expenses when the bankruptcy petition was filed. The Family Court held a hearing, post-petition, on Creditor's request for payment, made findings on the obligation due and payment of the obligation, and found Debtor in contempt of a prior order. Debtor filed a motion with the Bankruptcy Court requesting sanctions for violation of the automatic stay for the post-petition hearing and Creditor's collection efforts made pursuant to orders issued by the Family Court. In the Stay Violation Order, the Bankruptcy Court found that some actions violated the automatic stay and awarded attorneys' fees as actual damages and punitive damages. For the reasons set forth below, the Bankruptcy Court's Stay Violation Order is AFFIRMED.

## ISSUES ON APPEAL

On appeal, Debtor challenges the determination that the Family Court hearing and judgment were actions to establish a domestic support obligation, and therefore excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(2). Debtor also challenges the finding that the medical expenses Creditor attempted to collect arose post-petition. For the violations of the stay found by the Bankruptcy Court, Debtor challenges the calculation and amount of the attorneys' fees and damages awarded under § 362(k)(1).

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit (the "BAP") has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP. A final order in a bankruptcy case may be appealed by right under 28 U.S.C.

§ 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1692 (2015)).

The Bankruptcy Court's determination of whether there was a violation of the automatic stay is subject to de novo review. "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortg. Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (1998).

The Bankruptcy Court's award of fees and punitive damages for the violations of the automatic stay are reviewed for abuse of discretion. "The abuse of discretion standard is deferential and requires the reviewing court to lend credence to the [lower] court's determination." *Proctor v. Northern Lakes Cmty. Mental Health*, 560 F. App'x 453, 456 (6th Cir. 2014) (citing *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012)). "A court has abused its discretion if the reviewing court has a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion that it reached based on all of the appropriate factors." *Belfance v. Black River Petroleum* (*In re Hess*), 209 B.R. 79, 80 (B.A.P. 6th Cir. 1997). "While acknowledging this standard, the Court of Appeals for the Sixth Circuit has recently expressed it in another way: 'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000). *See also Cmty. Fin. Servs. Bank v. Edwards* (*In re Edwards*), No. 17-8028, 2018 WL 2717237, at *1 (B.A.P. 6th Cir. June 5, 2018), aff'd, 748 F. App'x 695 (6th Cir. 2019).

## FACTS

Debtor, Michelle Dougherty-Kelsay, and Creditor, Michael Stephen Kelsay, are parties to a contested divorce with related domestic support and child custody issues. On May 16, 2017, Creditor filed a Motion for Child Support and Motion for Contempt, seeking an order establishing child support to be paid by Debtor for the parties' three minor children, and an order of contempt

with an award of $750 in attorneys' fees. ("Contempt Motion No. 1"). On August 21, 2017, the Family Court issued an order establishing $617.60 as the amount of Debtor's monthly domestic support obligation and ordering the funds be withheld from Debtor's wages. (The "Pre-Petition Child Support Order"). The contempt request was not resolved in the August 21 order.

The Pre-Petition Child Support Order provided that any medical, dental, pharmaceutical, and extracurricular activity costs incurred on behalf of the children were to be paid 68% by Creditor and 32% by Debtor. *Id.* A "30/30 rule" for reimbursement of expenses was included in the order. Pursuant to this rule, the parent incurring an expense is required to provide the other parent an invoice for the expense within 30 days of its being incurred. The receiving parent then has 30 days to either pay or object to the expense. *Id.*

In September 2017, the Family Court issued an oral ruling requiring Creditor to transmit to Debtor invoices for outstanding expenses and for Debtor to either dispute or pay the invoices by October 6, 2017. Creditor sent the invoices to the Debtor as ordered. Debtor took no action to dispute the arrearages claimed by Creditor but did not pay the amount owed. So, on October 31, 2017, Creditor filed a second motion for contempt with the Family Court ("Contempt Motion No. 2"), seeking an order requiring Debtor to show cause why she should not be held in contempt for violating the September 2017 Order. An evidentiary hearing on Contempt Motion No. 2 was scheduled for February 19, 2018. An additional expense arose when on January 7, 2018, the parties' son was brought to St. Elizabeth Hospital for an injury suffered during a wrestling match. Creditor notified Debtor of the emergency room visit and twice reminded her to be prepared to pay $112, which represented her share of the copay (the "Medical Expense").

Debtor filed her bankruptcy petition on January 25, 2018 (the "Petition Date"). Even though Creditor's Contempt Motion No. 2 was pending in the Family Court on the Petition Date, with a hearing scheduled to take place a few weeks later, Debtor omitted Creditor and his divorce attorney, Holly Daugherty, from the schedules and did not otherwise list them as interested parties to receive notice of the bankruptcy. Consequently, on February 6, 2018, Creditor requested that Debtor pay the Medical Expense.

On February 13, 2018, Debtor amended her schedules, adding Creditor and his divorce attorney.  The next day, Debtor's counsel filed a "Suggestion of Bankruptcy" with the Family Court.  He also informed Attorney Daugherty that he believed the automatic stay "stops the continuation of any proceeding to collect pre-petition DSO from Debtor or from the property of the estate, unless the creditor first obtains relief from stay."  Creditor made no effort to stop the proceedings or modify the request for relief set forth in Contempt Motion No. 2, and the hearing on the motion was held on February 19, 2018.  (The "Post-Petition Hearing").  Debtor's divorce attorney objected to the hearing going forward on the grounds that Debtor was under the protection of the automatic stay.  Creditor's position was that the matter could go forward as the matter was for a domestic support obligation.  The Family Court overruled Debtor's objection and proceeded with the hearing.

The Family Court entered its findings of facts and conclusions of law on February 22, 2018. (The "Post-Petition Judgment").  In the Post-Petition Judgment, the Family Court found that the "Suggestion of Bankruptcy" filed by Debtor did not operate as a stay of the motions, because they related to domestic support obligations pursuant to 11 U.S.C. § 362(b).  Debtor was ordered to pay Creditor the arrears for her share of the children's expenses totaling $1,270.66.  The Family Court further ordered Debtor to "deliver a check for $50.00 as the first payment in an envelope to the visitation supervisor at her next supervised visitation time."  *Id.* (the "$50 Payment").  The remaining payments were to be made as a $50 increase in the amounts already being withheld from Debtor's monthly income.

Creditor made additional demands for payment on February 16, 23, 26, and March 6 and 12, 2018.  In addition, on July 30, 2018, Creditor sent Debtor a payment demand with a spreadsheet, purportedly for post-petition support obligations accrued between January 30, 2018, and August 3, 2018.  The spreadsheet includes the Medical Expense.  Creditor sent Debtor an updated version of the spreadsheet on September 17, and December 13, 2018, each time including the Medical Expense.

On March 15, 2018, Creditor filed a third motion for contempt ("Contempt Motion No. 3"), seeking an order to show cause why Debtor should not be held in contempt for violating the Family Court's orders, including Debtor's failure to deliver the $50 Payment.  The motion also requested

a reduction in Debtor's parenting time. *Id.* Debtor's counsel again emailed Creditor's counsel, outlining the basis of his opinion that the enforcement actions did not fall within the exceptions set forth in §362(b)(2) and warning that he would file a motion for violation of stay if Creditor did not cease and desist the prosecution of Contempt Motion No. 3. Creditor did not respond to the email. On March 22, 2018, Debtor filed a motion for an order finding Creditor in violation of the automatic stay (the "Stay Violation Motion") and emailed copies to Attorney Daugherty. Creditor subsequently withdrew Contempt Motion No. 3.

In March of 2018, the State of Kentucky notified Debtor that her state tax refund of $274.00 had been intercepted (the "KY Intercept"), transferred to the Department for Child Support ("DCS"), and applied to $4,417.00 in child support arrears. She also received notice that her federal income tax refund of $4,306.00 had been intercepted and transferred to DCS for the same obligation. (The "Federal Intercept"; the KY Intercept and the Federal Intercept shall be referred to collectively as the "Intercepts"). On April 5, 2018, DCS paid Creditor $1,270.66 and $2,887.60 from the proceeds of the Intercepts. On the same date, Creditor filed a proof of claim in the amount of $1,270.66, which he later withdrew after Debtor filed an objection.

Debtor's Stay Violation Motion was set for evidentiary hearing before the Bankruptcy Court on March 12, 2019, along with other contested matters including plan confirmation. On April 23, 2019, the Bankruptcy Court entered the "Stay Violation Order". The Bankruptcy Court found that the Family Court had jurisdiction to hold the February 19, 2018 hearing and enter judgment on any matter to which the automatic stay did not apply. Specifically, it held that as authorized by 11 U.S.C. § 362(b)(2)(A)(ii), the Family Court established Debtor's domestic support obligation when it determined that Debtor owed Creditor $1,270.66 in unpaid child support. The Bankruptcy Court also found that amending the parties' Child Support Order to provide for the amount to be included in Debtor's wage garnishment was permitted by 11 U.S.C. § 362(b)(2)(C), which provides an exception for withholding of Debtor's post-petition wages for payment of a domestic support obligation. Further, the Bankruptcy Court found that the Intercepts and Creditor's retention of those funds did not violate the automatic stay because 11 U.S.C. § 362(b)(2)(F) excepts from stay the interception of tax refunds to collect support obligations. Finally, the Bankruptcy Court found that the Medical Expense accrued post-petition based on the

timing of the 30/30 process set by the Family Court, so the automatic stay did not apply to any attempt to collect that debt.

However, the Bankruptcy Court found that actions related to the $50 Payment and certain aspects of the contempt proceedings did violate the automatic stay. Specifically, the order for Debtor to pay Creditor the $50 Payment in an envelope to the visitation supervisor was determined to be a violation of the stay because, although the Family Court intended the payment to apply to a domestic support obligation, that court did not limit collection to non-estate assets.

The Bankruptcy Court also found that all attempts by Creditor to collect the $50 Payment, including filing Contempt Motion No. 3, violated the automatic stay. In addition, the Bankruptcy Court held that the Family Court's contempt findings were void because although it was proper for the Family Court to find Debtor owed Creditor the $50 Payment, exercising its contempt power to aid Creditor in collecting it was not. For the stay violations, the Bankruptcy Court awarded Debtor as actual damages her attorneys' fees in the amount of $4,313.75, which was the amount incurred as of Creditor's withdrawal of Contempt Motion No. 3, and punitive damages of $1,000.

## DISCUSSION

In this appeal, the Panel reviews *de novo* the Bankruptcy Court's legal conclusions that Creditor violated the automatic stay, with Debtor bearing the burden of proof. The Panel reviews the Bankruptcy Court's awards of attorneys' fees as actual damages and punitive damages on account of such violations for an abuse of discretion.

When Debtor filed her bankruptcy petition on January 25, 2018, Creditor's Contempt Motion No. 2 was pending with the Family Court, with a hearing scheduled for February 19, 2018. Contempt Motion No. 2 was filed in October, after Debtor failed to respond to or pay invoices forwarded by Creditor as required by the Family Court's September 2017 oral ruling. Notwithstanding this known obligation, Debtor's bankruptcy petition did not list Creditor or his attorney. Once Debtor amended her schedules, Debtor's attorney notified the Family Court the next day. The Family Court decided to move forward with the hearing. *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012) (The court "in which the judicial

proceeding is pending . . . has jurisdiction to decide whether the proceeding is subject to the stay.").

To determine whether Debtor met her burden of proving that Creditor violated the automatic stay, we must determine if Creditor's actions would have been stayed under § 362(a) absent an exception, and whether an exception under § 362(b), or other applicable law, applies. *Wohleber v. Skurko* (*In re Wohleber*), 596 B.R. 554, 567 (B.A.P. 6th Cir. 2019). With regard to the February 19, 2018 hearing, when the Family Court established the amount of the obligations due to Creditor, ordered payment of the obligation through wage garnishment, and Creditor's subsequent payment by way of the Intercepts, we find that the Family Court's actions would not have been stayed under § 362 because exceptions under § 362(b) are applicable to each action. Therefore, Debtor cannot meet her burden that these actions constitute a violation of the stay.

It is axiomatic that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of the commencement or continuation of a judicial proceeding against a debtor that was commenced before the case; to recover a claim against the debtor that arose before the case; enforcement against the debtor or against property of the estate, of a judgment obtained before the case; or any act to obtain possession of or exercise control over property of the estate. 11 U.S.C. § 362(a). But judicial proceedings in domestic relations and family court cases raise complicated issues given the competing state and federal policies implicated in such matters. To address these concerns, the Bankruptcy Code includes several provisions largely designed to ensure that a debtor does not manipulate the bankruptcy process to circumvent orders to pay domestic support obligations as defined in 11 U.S.C. § 101(14)(A). *See* 11 U.S.C. §§ 362, 507, 523, 1307, 1322 and 1328. Three exceptions to the automatic stay, relevant to domestic support obligations, are applicable to this proceeding.

The February 19, 2018, hearing addressed the Pre-Petition Child Support Order, Contempt Motion No. 1, Contempt Motion No. 2, and visitation arrangements. The Family Court ruled that the stay was not applicable to the hearing because the motions involved domestic support obligations. Although that ruling is not binding on this panel, reviewing the pleadings, issues addressed, and the findings of the Family Court, we find that the February 19, 2018 hearing was conducted for the purpose of establishing and modifying a domestic support obligation and was

excepted from the automatic stay. 11 U.S.C. § 362(b)(2)(A)(ii). At the hearing, the Family Court established $1,270.66 as the amount owed by Debtor to Creditor. The amount consists of the $692.80 Debtor was invoiced and did not object to after the September hearing, and Debtor's share of the subsequent medical, dental, pharmaceutical, and extracurricular expenses of the parties' children under the formula provided in the Pre-Petition Child Support Order, calculated at $577.66. Establishing $1,270.66 as an additional domestic support obligation due to Creditor is an exception to the stay under 11 U.S.C. § 362(b)(2)(A)(ii). Therefore, we find that the judgment entered by the Family Court in the amount of $1,270.66 was the establishment of a domestic support obligation and was not a violation of the stay.

The Family Court ordered the additional domestic support obligation to be paid in $50 installments, and required Debtor to deliver the first installment, the $50 Payment, directly to the visitation supervisor on her next visit with the children. The remaining installments were to be paid by increasing the child support garnishment order on Debtor by $50 per month. Debtor appeals the Bankruptcy Court's finding that only the $50 Payment portion of the Family Court's order was a violation of the automatic stay. Pursuant to 11 U.S.C. § 362(b)(2)(C), the withholding of income that is property of the estate or the debtor, for payment of a domestic support obligation under a judicial or administrative order is not stayed by the filing of a bankruptcy petition. Accordingly, we find that the Family Court judgment directing the additional domestic support obligation to be paid through garnishment of Debtor's wages, effected by amending the garnishment order in place, was not a violation of the stay. The $50 Payment, however, will be addressed below.

The final exception to the stay applicable in this matter is 11 U.S.C. § 362(b)(2)(F), which allows the interception of a tax refund to collect support obligations despite the filing of a bankruptcy petition. In 2018, Debtor's state tax refund of $274.00 and federal income tax refund of $4,306.00 were intercepted and transferred to DCS to be applied to her $4,417.00 child support arrears. The funds were paid to Creditor. The Intercepts themselves are excluded from the stay under 11 U.S.C. § 362(b)(2)(F). There is no reason to allow the Intercepts but prohibit the distribution of those funds to Creditor. Therefore, we find that neither the interception of the funds, nor the payment to and retention of the funds by Creditor were a violation of the stay.

At the February 19, 2018 hearing, the Family Court denied Contempt Motion No. 1, but granted Contempt Motion No. 2, holding the determination of sanctions in abeyance. Although Contempt Motion No. 2 sought relief for Debtor's failure to comply with the Family Court's order related to domestic support obligations, its purpose was not to establish or modify such an order. Rather, the purpose was to compel Debtor to pay pre-petition arrearages under threat of sanction for civil contempt. Accordingly, we find that Debtor has met her burden to establish that the Family Court Judgment finding her in civil contempt violated the stay and is void. In addition, the filing of Contempt Motion No. 3, after Debtor filed her bankruptcy petition, violated the stay as a forbidden commencement of a judicial proceeding to enforce a pre-petition obligation. 11 U.S.C. § 362(a).

The initial inquiry regarding the direct $50 Payment for the domestic support obligation and the $112 Medical Expense, is whether they were obligations subject to the stay. *Wohleber*, 595 B.R. at 567. The parties do not dispute that the expenses included in the $1,270.66 domestic support obligation were incurred pre-petition. There is a dispute, however, about whether the Medical Expense is a prepetition or post-petition obligation. The Medical Expense resulted from a pre-petition hospital visit, but because of the 30/30 rule, Creditor asserts that the Medical Expense did not become a claim until an invoice was submitted to Debtor, which occurred post-petition. This argument is contrary to the plain meaning of "claim" as found in the Bankruptcy Code. Under the Code, a claim is a right to payment, whether matured, unmatured, or disputed. 11 U.S.C. § 101(5). It arises regardless of enforcement efforts. *See Steward Foods, Inc. v. Broecker* (*In re Stewart Foods, Inc.*), 64 F.3d 141, 146 (4th Cir. 1995) ("[T]hat the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations."). The Medical Expense arose from a pre-petition injury and hospital visit. The fact that Creditor sent the invoice to collect the obligation from Debtor after the petition date did not transform it into a post-petition obligation. There is no exception to the stay under 11 U.S.C. § 362(b), or other applicable law, that applies to collection of the first $50 Payment or the Medical Expense, however.

Unlike the remaining $50 installment payments that were ordered to be made pursuant to an amended garnishment order, the initial $50 Payment ordered by the Family Court was to be

paid by Debtor directly to Creditor.  To except collection of the payment from the stay, it would need to be paid from property that is not property of the estate. *See* 11 U.S.C. § 362(b)(2)(B). Because the judgment did not limit collection of the $50 Payment from funds that were not property of the estate, that portion of the judgment violated the stay and is void.  Similarly, Creditor's attempts to collect the $50 and the Medical Expense were not limited to funds that were not property of the estate.  Therefore, his attempts to collect both debts violated the stay.

When there has been a willful violation of the stay, § 362(k) provides that the injured party can recover actual damages, including costs and attorneys' fees, and where appropriate, punitive damages.  11 U.S.C. § 362(k)(1).  Creditor sent multiple messages to Debtor in an effort to collect the $50 Payment and the Medical Expense after Debtor advised him, albeit belatedly, about her bankruptcy case. He also filed Contempt Motion No. 3 to compel Debtor to pay the obligations. The Bankruptcy Court found that his actions constitute a willful violation of the stay under 11 U.S.C. § 362(k)(1), and we perceive no basis to disturb that finding.  We now consider whether the Bankruptcy Court abused its discretion in awarding damages for Creditor's violations of the stay.

Debtor requested actual damages of $1,270.66, attorneys' fees of $16,743.74 or 40% of actual damages, and punitive damages from Creditor pursuant to § 362(k)(1).  To be awarded, damages must be "proximately caused by and reasonably incurred as a result of the violation of the automatic stay." *Grine v. Chambers* (*In re Grine*), 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010). The Bankruptcy Court did not award actual damages of $1,270.66 because establishing the amount of the domestic support obligation and the interception of tax refunds to pay support obligations are not violations of the stay.  Instead, the Bankruptcy Court awarded attorneys' fees as actual damages.  In determining that $4,313.75 for attorneys' fees was reasonable, the Bankruptcy Court considered the nature and extent of litigation, the total fees accrued, and the parties' stipulations about the attempts to settle the matter.  Finally, punitive damages of $1,000 were awarded by the Bankruptcy Court based on Creditor's repeated post-petition collection attempts, seeking contempt, and ceasing the collection efforts only after the Stay Violation Motion was filed.  We note that the Bankruptcy Court's damages calculation did not consider the collection of the Medical Expense as a violation of the stay.  This Panel's disagreement with the Bankruptcy Court

regarding the prepetition nature of the Medical Expense (and its conclusion that Creditor violated the stay by attempting to collect it) does not impact the propriety of the Bankruptcy Court's damages determination because the collection efforts for the Medical Expense were consistent with Creditor's attempts to collect the $50 Payment. These actions were part of the same conduct that formed the basis for the Bankruptcy Court's imposition of the $1,000 in punitive damages. Based on the facts considered by the Bankruptcy Court and its application of the law for the award of damages and attorneys' fees, we find that that the court did not abuse its discretion in allowing fees and damages as set forth herein. *See M.J. Waterman & Assocs*., 227 F.3d at 608.

## CONCLUSION

For the reasons set for above, we **AFFIRM** the Bankruptcy Court's Stay Violation Order.